MOUNT ARBOR NURSERIES, Respondent, v. NEW YORK, CHICAGO AND ST. LOUIS RAILROAD COMPANY, a Corporation, and CHICAGO BURLINGTON AND QUINCY RAILROAD COMPANY, a Corporation, Appellants.*

St. Louis Court of Appeals. Opinion filed May 5, 1925.

1. **CARRIERS: Carriers of Freight: Delayed Shipment: Damages: Nursery Stock Freezing: Connecting Carrier: Liability.** In an action against a carrier for damages for negligent delay wherein a carload of nursery stock was caused to freeze, *held* the connecting carrier was absolved from liability, though shipment was delayed, where the freezing and not the delay on the part of the connnecting carrier was the proximate cause of the injury or damage.

2. **INTERSTATE COMMERCE: Carriers: Shipment of Freight: Governed by Federal Law Applicable.** An interstate shipment is wholly governed by Federal law applicable.

3. ——: ——: **Negligence: Delayed Shipment: Liability: Governed by Federal Law Contracts and Common Law Principles.** The liability of a carrier for damages for negligent delay wherein a carload of nursery stock was·caused to freeze is governed by the laws of the United States as enacted by Congress, the contract between the parties, and common law principles promulgated by the United States courts.

4. **CARRIERS: Carriers of Freight: Interstate Commerce: Negligence: Damages to Interstate Shipment: Initial Carrier: Carmack Amendment.** The liability of an initial or connecting carrier for damage

Mount Arbor Nurseries v. Railroad Co.

to an interstate shipment is subject to the provisions of the Carmack Amendment (U. S. Comp. Stat., sections 8604a, 8604aa) making the initial carrier responsible for loss on its own line or the line of a connecting carrier.

5. ———: ———: ———: ——— ———: Nursery Stock Freezing: Negligent Delay: Evidence: Prima-facie Case. In an action against a carrier for damages for negligent delay wherein a carload of nursery stock was caused to freeze and the evidence showed that a reasonable time for transporting a shipment of nursery stock between the points of shipment was not in excess of six days while the shipment in the instant case took seventeen days, held the evidence made a prima-facie case of negligent delay.

6. ———: ———: ———: ———: ———: Unexplained Delay: Presumption. Where a carrier fails to explain the cause for a delayed shipment of perishable freight, the delay consuming much more than the reasonable time for transporting a shipment of like character between the points of shipment, it will be presumed that the delay was negligent.

7. ———: ———: ———: ———: ———: Perishable Nursery Stock: Must Be Transported Within Reasonable Time. It is the duty of a carrier to exercise diligence in transporting an interstate shipment of perishable nursery stock, that is, within a reasonable time, to destination.

8. ———: ———: ———: ———: Mere Delay of Shipment Not of Itself Negligence. Mere delay in a shipment by a carrier does not of itself establish negligence.

9. ———: ———: ———: ———: Instructions: Constituent Elements of Negligent Delay: Instruction Sufficient. An instruction in an action against a carrier for damages for negligent delay wherein a carload of nursery stock was caused to freeze, held to set forth sufficiently the constituent elements of negligent delay.

10. NEGLIGENCE: Burden of Proof: On Party Asserting Negligence. The burden of proof of establishing negligence is on the party who asserts it.

11. INSTRUCTIONS: Carriers: Damages: Nursery Stock Freezing: Instruction Properly Refused as Misleading. In an action against a carrier for damages for injury to a carload of nursery stock caused by freezing, an instruction that the burden of establishing negligence of the carriers in the transportation of the shipment was upon the plaintiff and that unless the jury found from the greater weight of all the evidence that the carriers were guilty of negli-

gence, the verdict should be for them and that mere proof of delay did not of itself establish negligence, though abstractly correct, *held* properly refused as it was in effect misleading under the evidence.

12. ————: ————: ————: ————: **Instruction Properly Refused as Attempting to Raise False Issue.** In an action against carriers for damage to nursery stock caused by freezing, an instruction that plaintiff, by ordering a box car in which to make shipment, assumed whatever risk there was of damage by freezing by shipping the nursery stock in a box car and, that if the jury found that the injury to the shipment was caused by its being shipped in a box car, the verdict must be for the carriers, *held* properly refused as attempting to raise a false issue as it is evident from the evidence that plaintiff did not assume whatever risk there was of damage by freezing by shipping in a box car for it did not assume the result of the carrier's ngeligence.

13. **NEW TRIAL: Two Defendants: Several Liability: Granting New Trial to One Defendant Did Not Require Granting New Trial As to Other.** In an action against initial and connecting carriers for damage to nursery stock caused by freezing, the fact that the verdict was set aside as to one of the carriers, the court did not err in refusing also to grant the other carrier a new trial as the liability of the two carriers was several.

*Headnotes 1. Carriers, 10 C. J., Section 409; 2. Carriers, 10 C. J., Section 42; Commerce, 12 C. J., Section 112; 3. Carriers, 10 C. J., Section 42; 4. Carriers, 10 C. J., Section 858; 5. Carriers, 10 C. J., Section 440; 6. Carriers, 10 C. J., Section 430; 7. Carriers, 10 C. J., Section 404; 8. Carriers, 10 C. J., Section 430; 9. Carriers, 10 C. J., Section 441; 10. Negligence, 29 Cyc., p. 597; 11. Carriers, 10 C. J., Section 441; Trial, 38 Cyc., p. 1602; 12. Carriers, 10 C. J., Section 441; Trial, 38 Cyc., p. 1615; 13. New Trial, 29 Cyc., p. 735.

Appeal from the Circuit Court of Marion County.—*Hon. Charles T. Hays*, Judge.

REVERSED as to Chicago, Burlington and Quincy R. R. Co.

AFFIRMED as to New York, Chicago and St. Louis R. R. Co.

*H. J. Nelson, J. G. Trimble, Glahn I. Diemer* and *J. A. Lydick* for appellant, Chicago, Burlington & Quincy Railroad Company.

*J. C. James,* of Counsel.

(1) Defendant's peremptory instruction at the close of plaintiff's case and again at the close of all the evidence should have been given. (a) It is well settled that the liability of a carrier of an interstate shipment is to be determined by the laws of the United States, the provisions of the bills of lading and the common law as applied in the Federal courts. State Laws and decisions of State courts holding a different view have no application. C. & N. W. R. R. Co. v. Whitnack Produce Co., 258 U. S. 369; St. Louis Iron Mountain & Southern Ry. v. Starbird, 243 U. S. 592; N. Y. C. H. R. R. Co. v. Beaham, 242 U. S. 148; A. T. & S. F. Ry. Co. v. Harold, 241 U. S. 371; Railway v. Rankin, 241 U. S. 319; Railway v. Blish Milling Co., 241 U. S. 190; Northern Pacific Ry. Co. v. Wall, 241 U. S. 87.; Southern Ry. Co. v. Prescott, 240 U. S. 632; Adams Express Co. v. Croninger, 226 U. S. 491; United Metals Selling Co. v. Pryor, 243 Fed. 91; Donovan v. Wells Fargo & Co., 265 Mo. 291; Clemons Produce Co. v. D. & R. G., 203 Mo. App. 100, 219 S. W. 660; Joseph v. Chicago, B. & Q. R. R. Co., 175 Mo. App. 18; Bradford v. Hines, 206 Mo. App. 582. (b) Where a shipment moving in interstate commerce is damaged or destroyed by an act of God, but would not have been within the range of the destructive force except for the negligent delay of the carrier, it is the established rule accepted and enforced in the Federal courts, as well as many State courts, that the act of God and not the negligent delay is the proximate cause of the loss and that the negligent delay is too remote as a contributing cause to render the carrier liable. 10 Corpus Juris, page 126; Memphis & Charleston R. R. Co. v. Reeves, 10 Wall. (77 U. S.) 176; St. Louis etc. Ry. Co. v. Commercial Union Insurance Co., 139 U. S. 223; Scheffer v. Washington City Midland, etc., R. Co., 105 U. S. 249; Denny v. Railroad, 13 Gray 481; Empire State Cattle Co. v. A. T. & S. F. Ry. Co.,

135 Fed. 135; Thomas v. Lancaster Mills, 71 Fed. 481; Chicago, etc., R. R. Co. v. Elliott, 55 Fed. 949; Scott v. Baltimore etc. Steam-Boat Co., 19 Fed. 56; Caldwell v. Southern Express Co., 4 Fed. Cas. No. 2303; Henry v. Railroad, 76 Mo. 288; Ballentine v. Railroad, 40 Mo. 491; Clark v. Railroad, 39 Mo. 184; Francis v. Transfer Co., 5 Mo. App. 7; Barnet v. N. Y. C. & H. R. R. Co., 118 N. W. 625; Michigan Central Ry. Co. v. Burrows, 33 Mich. 6; Lamar Manufacturing Co. v. St. Louis & San Francisco R. R. Co., 117 Mo. App. 453; Lightfoot & Sons v. St. Louis & San Francisco R. R. Co., 126 Mo. App. 532; American Brewing Assn. v. Talbot et al., 141 Mo. 674; Haley v. St. Louis Transit Co., 179 Mo. 30; Davis v. Ry. Co., 89 Mo. 340; Dolan Fruit Co. v. Davis, D. G., 196 N. W. (Neb.) 168; Northwestern Consol. Milling Co. v. Chicago, B. & Q. R. R. Co., 160 N. W. 1028. (c) Plaintiff's evidence clearly showed the cold and freezing weather with temperature far below the point necessary to damage shipment of perishable nursery stock in a box car occurred long before defendant Chicago, Burlington and Quincy Railroad Company could possibly have transported said shipment to destination after receiving it at Chicago, Illinois. (d) The burden was on plaintiff to prove actual negligence causing delay to its shipment and the mere proof of time loaded and time of arrival at destination with opinion as to usual and ordinary time for transportation of said shipment from origin to destination is not sufficient to permit recovery. Delay alone is not sufficient to establish liability. The delay must have been a negligent one. Southern Ry. Co. v. Prescott, 240 U. S. 632; Robb v. Wichita Falls Ry. Co., 213 S. W. 155; Harrison v. C. & A. Ry. Co., 239 S. W. 871; McMickle v. Wabash Ry. Co., 209 S. W. 611; Baker v. Schaff, 211 S. W. 103; Burgher v. Wabash Ry. Co., 217 S. W. 854; Baker v. Schaff, 221 S. W. 743; Moore v. C. B. & Q. R. Co., 223 S. W. 1079; Bland v. C. & A. Ry. Co., 232 S. W. 232. (e) Defendant's tariff published, posted and on file as required by

law, provided alternative rates dependent upon the service to be rendered in respect to protection of perishable shipments from damage by frost and freezing of which plaintiff had actual knowledge through its shipping clerk and by electing to make its shipment in a box car under the "Shippers' Protective Service" provision of said tariff thereby assumed all risk of damage by freezing. The furnishing of service different from the provisions of said tariff would have been a discrimination.  New York Central & H. R. R. Co. v. Beaham, 242 U. S. 148; Southern Ry. Co. v. Prescott, 240 U. S. 632; United Metals Selling Co. v. Pryor, 243 Fed. 91; Clemons Produce Co. v. D. & R. G., 203 Mo. App. 100, 219 S. W. 660; Fort v. D. & R. G. Ry. Co., 195 Pacific 109; Randall v. Detroit & M. Ry. Co., 180 N. W. 361; Erie Railroad v. Stone et al., 244 U. S. 332; Atchison, Topeka & Santa Fe Ry. Co. v. Robinson, 233 U. S. 173; Louisville & Nashville Ry. Co. v. Maxwell, 237 U. S. 94; Dayton Coal & Iron Co. v. C. N. O. & T. P. Ry. Co., 239 U. S. 446; P. C. C. & St. L. R. Co. v. Fink, 250 U. S. 577; New York Central Ry. Co. v. York, 256 U. S. 406.  (2)  The court erred in giving plaintiff's Instruction Number 1.  Plaintiff's instruction No. 1 is erroneous for the reason it is broader than the pleadings and is not supported by the evidence.  Strother v. A. T. & S. F. Ry., 212 S. W. 404; Baker v. Bush, 194 S. W. 1061, cases cited; Degonia v. Railroad, 224 Mo. 588; Small v. Ice & Fuel Co., 179 Mo. App. 456; Kirkpatrick v. Railway, Co., 211 Mo. 68; Kellogg v. City of Kirksville, 132 Mo. App. 519; Black v. Railway Co., 217 Mo. 685; State ex rel. v. Ellison, 270 Mo. 645; Muser v. Kansas City, 249 S. W. 681.  (3) The court erred in giving plaintiff's instruction Number 2. Instruction No. 2 is not supported by the evidence and is erroneous in withdrawing from the consideration of the jury the defense as made by defendant's tariffs, thereby depriving defendant of its rights under the Fed eral laws.  New York Central & H. R. R. Co. v. Beaham, 242 U. S. 148; Clemons Produce Co. v. D. & R. G. Rail-

road, 203 Mo. App. 100. The court erred in refusing to give defendant's instructions. Defendant's instructions Nos. 5 and 6 correctly stated the law applicable to the case and defendant was entitled to have its theory of the case submitted to the jury as stated in said instructions. Davis v. Springfield Hospital, 196 S. W. 104; Bailey v. Wabash, 207 S. W. 82; Sullivan v. Chauvenet, 186 S. W. 1090; Humbird v. Railway Co., 110 Mo. 76; Murray v. St. Louis Transit Co., 176 Mo. 191.

*Glahn & Diemer* for appellant, New York, Chicago & St. Louis Railroad Company.

(1) The instruction in the nature of a demurrer at the close of plaintiff's evidence should have been given as to the defendant New York, Chicago, and St. Louis Railroad Company, there is no evidence of negligence, nor even of delay in the shipment. Winslow v. C. & A. R. R., 170 Mo. App. 617, 157 S. W. 96; Burgher v. Wabash R. R. Co., — Mo. App. —, 217 S. W. 854; Howell v. Davis, — Mo. App. —, 236 S. W. 889. (2) The instruction in the nature of a demurrer prayed by this defendant at the close of all the evidence should have been given. Same authorities as under point 1 above. (3) The court erred in giving plaintiff's instruction No. P-1. (a) Mere delay in the shipment, does not itself establish negligence. Robb v. Wichita Falls & N. W. R. R., — Mo. App. —, 213 S. W. 155; Bland v. C. & A. Ry., — Mo. App. —, 232 S. W. 232; Miller v. Q. O. & K. C. Ry., 205 Mo. App. 463, 255 S. W. 116; Moore v. C. B. & Q. Ry., — Mo. App. —, 223 S. W. 1079; Baker v. Schoff, — Mo. App. —, 221 S. W. 743; McMickle v. Wabash R. R. Co., — Mo. App. —, 209 S. W. 611; Winslow v. C. & A. R. R. Co., 170 Mo. App. 617, 157 S. W. 96; Burger v. Wabash Ry. Co., — Mo. App. —, 217 S. W. 854. (b) This instruction submits to the jury the question of whether the shipment was "negligently delayed" without informing the jury as to what consti-

tutes "negligent delay." This was error. Howell v. Davis, — Mo. App. —, 236 S. W. 889. (4) Instruction No. P-2 for the plaintiff should not have been given. It also submits to the jury the question of "negligent delay" without defining these terms. Howell v. Davis, — Mo. App. —, 236 S. W. 889. (5) This being an interstate shipment it is governed by the Federal law; and the burden of proof to establish negligence is on the plaintiff. And the instruction offered by this defendant on this subject should have been given. Burgher v. Wabash Ry. Co., — Mo. App. —, 217 S. W. 854; Bland v. C. & A. R. R., — Mo. App. —, 232 S. W. 232; Southern Ry. Co. v. Prescott, 240 U. S. 632, 60 Law Ed. 836; New Orleans, etc., Ry. Co. v. Harris, 247 U. S. 367, 62 Law Ed. 1167; Memphis & Charleston R. R. v. Reeves, 77 U. S. 176, 19 Law Ed. 909. (6) The instruction asked by the defendant to the effect that plaintiff assumed the risk incident to making the shipment in the box car, should have been given. Especially in view of the fact that this was an interstate shipment, and the cold weather was the proximate cause of the injury, and any delay only the remote cause. Denny v. Railroad Co., 13 Gray 481; Morrison v. Davis, 20 Pa. St. 171; both the above cases are cited and approved in Memphis & Charleston R. R. Co. v. Reeves, 77 U. S. 176, 19 Law Ed. 909. (7, 8, 9) Where there are several defendants and a joint verdict is rendered and damages found as against all the defendants the judgment must pursue the verdict and be rendered jointly against all. And if the verdict be set aside as to a part of the defendants, no judgment can be rendered against the other defendants. Cunningham v. Dyer, 2 T. B. Mon. (Ky.), 50, 2 Ency. Pl & Pr., p. 864.

*Rendlen & White* and *F. D. Wilkins* for respondent.

DAVIS, C.—This is an action *versus* a carrier for damages for negligent delay wherein a carload of nur-

sery stock was caused to freeze. The jury returned a verdict in favor of plaintiff for $1329.51 against the New York, Chicago and St. Louis Railroad Company, hereinafter called the Nickle Plate, of which amount plaintiff voluntarily remitted one cent, and for $1329.50 against the Chicago, Burlington and Quincy Railroad Company, hereinafter called the Burlington. On the verdicts of the jury the court rendered a joint judgment against both defendants in the sum of $1329.50, from which each defendant appealed.

There were two trials of this case. In the first trial the jury returned a verdict in favor of plaintiff against both defendants. Thereupon defendants filed their separate motions for a new trial and in arrest of judgment. The trial court awarded the Burlington a new trial, withholding the judgment upon the verdict as to the Nickle Plate until such new trial was determined as to the Burlington. The second trial resulted in a verdict against the Burlington for $1329.50. The verdict standing against the Nickle Plate was for $1329.51. After the Burlington's Motion for a new trial as to the second trial was overruled, plaintiff entered a *remittitur* of one cent from the verdict against the Nickle Plate, and the trial court thereupon entered a joint judgment in favor of plaintiff and against both defendants in the sum of $1329.50.

Plaintiff's evidence tends to show that on October 28, 1920, at Painesville, Ohio, Mark Welch, a nursery man, placed in Pennsylvania car No. 511175 and delivered to the Nickle Plate, trees and nursery stock in good condition, sound and merchantable, consigned to plaintiff at Shenandoah, Iowa; that the trees and nursery stock were properly packed and loaded in a box car according to the best usage known in the nursery business for that time of the year; that the stock was well bedded and packed in straw; that the temperature at Painesville, at the time of the shipment as shown by the government weather reports, was 42 degrees Fahrenheit; that the

consignor ordered a box car to transport the nursery stock, and made no request for carriers' protective service or special service of any kind; that plaintiff's expert witness Cuneen testified such nursery stock could be shipped in a box car without damage by freezing as late as November 12th; that others testified for plaintiff that shipments could start from Painesville in box cars for Shenandoah as late as November 10th without danger of damage by freezing; that a temperature of 25 degrees above zero or lower will damage nursery stock in box cars; that this nursery stock had been packed in a customary manner, first, by laying straw on the floor of the car and placing trees thereon, and placing material, consisting of a mixture of straw and moss, on the roots of the trees, which was wet down by sprinkling with water, adding another layer of trees and so continuing until the loading operation was completed; that the nursery stock in this car was perishable; that the distance over the route of this shipment from Painesville to Chicago, Illinois, on the Nickle Plate is 369 miles, and from Chicago to Shenandoah on the Burlington 462 miles, a total distance of 831 miles; that the ordinary, usual and customary time for transporting ordinary freight from Painesville to Shenandoah is from four to five days; that it was agreed that the car was delivered to the Burlington at Chicago on November 8, 1920, at 9:30 a. m.  The evidence further tends to show that it took eleven days for this car to travel 369 miles from Painesville to Chicago, and six days from Chicago to Shenandoah; that the reasonable time for transporting freight from Painesville to Chicago is two days, and from Chicago to Shenandoah two and one-half days; that on the third morning after the delivery of the car on October 28th, plaintiff's shipping clerk called the agent of the Burlington at Shenandoah, gave him the number and routing of this car of nursery stock, requesting a tracing; that plaintiff made inquiry every day or so; that about eight days after the car had been shipped, the shipping clerk again called the

Burlington regarding this car, telling him that the car should be at destination, and the agent replied that he had a line on the car; that it would be taken care of; that the shipment failed to arrive until about six days after this conversation; that plaintiff introduced in evidence a copy of a claim presented to defendants, stating thereon had it been delivered within the usual time of eight to twelve days it would have escaped a cold wave, which struck about November 10th to 11th, at which time the damage was done.

Plaintiff's evidence further tended to show the climatic conditions as prepared by the United States Weather Bureau for various points in Ohio, Indiana, Illinois, Iowa and Omaha, Nebraska, giving the maximum and minimum temperatures on each day from October 28th to November 13th inclusive; that the minimum temperature at Chicago on November 10th was 27 degrees above zero, and November 11th 18 degrees above; at Aurora, Illinois, November 11th, 20 above; at Peoria, Illinois, November 11th, 18 above; at Galva, Illinois, November 10th and 11th, 20 above each day; Burlington, Iowa, November 10th, 19 above; November 11th, 23 above, Omaha, Nebraska, November 9th, high 47, low 20 above; November 10th, 17 above; November 11th, 14 above; November 12th, 14 above; November 13th, 15 above; that Shenandoah was about 53 miles east of Omaha.

Plaintiff's witness Morse testified there was a cold spell at Shenandoah, Iowa, continuing from four days to a week and starting about five days before shipment arrived at Shenandoah; that to the best of his knowledge the temperature was below 17 degrees above zero; that the ground was frozen between four and five inches, and that nursery stock packed as was this shipment could be transported in a box car at a temperature as low as 25 degrees above zero without causing damage by freezing; that they will stand a temperature of 25 degrees; that when the box car was ordered no request for protection from damage by freezing was made.

The evidence further tends to show that the nursery stock was more or less frozen when received at Shenandoah, Iowa, and it was agreed that the reasonable value was $1226.11, and that the nursery stock was received in the same car in which it was loaded at Painesville.

The evidence further tended to show by other witnesses that nursery stock packed as this was would not freeze unless the temperature went below 18 to 20 degrees above zero; and other evidence that it would freeze at 20 degrees above zero; that practically all of the nursery stock was damaged, and part of it was totally dead; that the box car contained no stove or heater to protect the shipment; that shipping the nursery stock in a box car was the proper method of shipping at the time it was shipped; that a box car load of dormant nursery stock could be safely shipped on November 1st from Painesville to Shenandoah, also on the 2nd, 5th, and up to about November 10th; that dormant nursery stock would freeze between 20 and 25 degrees above zero, depending on weather conditions and the way the wind blows.

The evidence for defendant Burlington tends to show that the Nurseries traced practically every car (at Shenandoah) that was coming in at that time of the year; that it introduced in evidence a copy of a Perishable Protective Tariff No. 1, I. C. C. No. 6, with Supplements 4 and 5 thereto, duly certified by the Secretary of the Interstate Commerce Commission, as having been in force and effect during the time the shipment in question moved, which tariff contains the rates, rules and regulations governing the transportation of perishable freight in carload lots, and provided alternative rates depending on the service to be rendered by defendant in respect to the protection of such shipments from damage by frost and freezing; that the tariff filed with the I. C. C. provided alternative rates depending upon the service to be rendered by this defendant in respect to the protection of perishable commodities from damage by freez-

ing, etc., known as "CARRIERS' PROTECTIVE SERVICE AND SHIPPERS' PROTECTIVE SERVICE." This tariff provided that by requesting and paying the charges, plaintiff could have protected the shipment from freezing, and further provided that, upon failure to make a request for such service, the shipper would be deemed to have elected to make its shipment under its own protection and at its own risk of damage by freezing, with no obligation on defendant to furnish artificial heat.

The petition alleges in part: That the defendants did not take proper care of said goods, wares and merchandise, to-wit, said nursery stock, and did not safely keep, carry and deliver the same without delay, but on the contrary negligently and carelessly so delivered said shipment and so negligently and carelessly performed their duties as common carriers that they permitted said shipment of stock of merchandise to be delayed for a long period of time over and beyond what was reasonably required to transport said shipment from Painesville, Ohio, to Shenandoah, Iowa, to-wit, for a space of about eight to eleven days more than was reasonably required to transport and carry said merchandise, and negligently and carelessly suffered said nursery stock to be and remain exposed to cold and frost, and that by reason of such negligent and careless delay in the transportation of said stock or merchandise the same was exposed to cold and frost, which would not have occurred had said shipment been transported with reasonable dispatch and due care, and that by reason of such negligent delay on the part of the defendants and each of them said nursery stock became and was frozen, etc.

Such further facts as are pertinent will appear in the discussion of the questions raised.

I.   The Burlington contends the trial court erred in refusing to direct the jury to return a verdict in its favor.

Plaintiff's evidence tends to show that nursery stock, carrier in an ordinary box car and packed as was this

shipment, could, for about a day, withstand a tempera-
ture not lower than 20 to 25 degrees above zero Fahren-
heit, but so subjected for a longer period of time would
freeze.  Plaintiff's evidence further tends to show that
Shenandoah is about 53 miles east of Omaha; that at
Omaha, so the climatic report tends to show, on Novem-
ber 9, what may be called a cold wave began, the temper-
ature falling from a maximum of 47 degrees to a mini-
mum of 20 degrees above zero; that on November 10,
the maximum was 38 and the minimum 17 above zero;
that on November 11, the maximum was 33 and the mini-
mum 14 degrees above zero; that on November 12th the
maximum was 22 and the minimum 14 degrees above zero;
that on November 13, the day the nursery stock was
delivered to plaintiff, the maximum was 34 and the mini-
mum 15 degrees above zero; that on November 8, the
day of delivery of the car containing the nursery stock
by the Nickle Plate to the Burlington (the hour of de-
livery being 9:30 a. m.) the maximum was 52 and the
minimum 44 degrees above zero; that this cold wave trav-
eled from west to east and the nursery stock from east
to west.

One of plaintiff's witnesses, C. E. Morse, the storage
foreman at Shenandoah, testified that the cold spell
lasted from four days to a week, starting, to the best of
his recollection, about five days before the shipment ar-
rived, to-wit, on November 13, and that it froze the
ground at Shenandoah between four and five inches; that
to the best of his knowledge the temperature was below
17 degrees above zero, with the weather moderating
about a day before the car arrived.

The evidence tends to show and the case was tried
on the theory by both parties that nursery stock is per-
ishable freight and must receive specially fast movement.
The evidence further tends to show that 48 hours was a
reasonable time for the transportation of freight from
Chicago to Red Oak, Iowa, the latter point being nineteen
miles from Shenandoah, the freight going down to Shen-

andoah from Red Oak on a local; that plaintiff's plant at Shenandoah is situated on the Wabash and has no connection with the Burlington tracks except through a "Y" track; that in order to deliver a railroad car to plaintiff's plant brought in by the Burlington, it was necessary to await an incoming Wabash freight train to switch the car and haul it over the Wabash tracks to the plant; that the car in question was placed by the Burlington on the "Y" track November 13, about 2:30 p. m., and delivered by the Wabash to plaintiff the same day about 5:30 p. m.

Plaintiff's evidence further tends to show that the Burlington admitted the car containing this nursery stock was delivered by the Nickle Plate to the Burlington on November 8, 9:30 a. m., plaintiff trying its case on that theory. The record is wanting evidence tending to show that the Burlington scheduled a freight train by which it could immediately, after receiving the car, commence transportation, and it is evident that extra service on its part would have been discrimination under the interstate commerce acts. If we could assume, there is no evidence in the record to that effect, that a regularly scheduled freight train left for Red Oak in the afternoon or evening of November 8, yet transportation from Chicago to Red Oak, as shown by plaintiff's testimony, would reasonably have consumed 48 hours, too late to have caught, on November 10, a freight train to arrive at Shenandoah at 2:30 p. m., the time plaintiff's evidence shows the train arrived on November 13. It may be inferred from plaintiff's evidence that if the nursery stock car had been delivered to plaintiff by the Wabash at 5:30 p. m. on November 11, there would have been neither delay nor negligent delay on the part of the Burlington.

Considering evidence of the temperature at Omaha, 53 miles west of Shenandoah, as shown by the climatic reports, the testimony of witness Morse and plaintiff's other witnesses, we think it is shown with sufficient certainty by plaintiff's evidence that even if the nursery

stock had been delivered on November 11, at 5:30 p. m, it would have been delivered within a reasonable time, and that it would also have been frozen and damaged. The freezing, not the delay on the part of the Burlington, was the proximate cause of the injury or damage. The Burlington should be absolved from liability. We think the trial court erred in refusing to direct a verdict in its behalf.

II.   The Nickle Plate also contends that the trial court erred, at the close of plaintiff's evidence and at the close of the whole evidence, in refusing to direct the jury to return a verdict for defendant.

The shipment in question was interstate, and is therefore wholly governed by the Federal law applicable. In determining the liability of the carrier, under the facts here involved, we must look to the laws of the United States as enacted by Congress, the contract between the parties, and common law principles promulgated by the United States court. [New York C. & H. R. Co. v. Beaham, 242 U. S. 148; Johnson v. Railroad, 211 Mo. App. 564, 249 S. W. 658.]

III.   The Nickle Plate was the initial or contracting carrier and, as the shipment was interstate, it became subject to the provisions of the Carmack Amendment (Act of Jan. 29, 1906, chap. 349; 34 Stat. at Large, 584-595; Comp. Stat., secs. 5563 et seq.; Fed. Stat. Ann. (2 Ed.), pp. 33-499), making the initial carrier responsible for loss on its own line or the line of a connecting carrier. [Johnson v. Railroad, 211 Mo. App. 564, 249 S. W. 658.]

IV.   It is the contention of the Nickle Plate that plaintiff's evidence failed to show either a delay or a negligent delay. We refuse to assent to either proposition. The reasonable time for transporting a shipment of this character between Painesville and Shenan-.

Mount Arbor Nurseries v. Railroad Co.

doah was not in excess of six days, while this particular shipment took from October 28 to November 13, inclusive, consuming seventeen days. Defendant failed to explain the cause of the delay. Having refused to adsolve itself by explanation after plaintiff made a prima-facie case, it will be presumed, in the case of perishable goods, the delay was negligent.

Measured by the common law of the Federal courts, it became the duty of the Nickle Plate to transport diligently, that is within a reasonable time, to destination. In view of the perishable nature of the freight, diligence was imperative. Contemplating the latitude and the season, freezing weather could have been foreseen and anticipated, notwithstanding that nursery stock could, usually, with impunity, be moved from Painesville, over the route taken as late as November 10. The delay of eleven days was unwarranted and unreasonable, and, had reasonable and diligent carriage obtained, as the nature of the stock demanded, freezing would not have resulted. The governing rule is stated in Note to 3 Am. & Eng. Ann. Cas. 1. c. 454, where it is said:

"It is generally held that a negligent delay in the transportation of perishable goods by reason of which they are injured by being frozen renders the carrier liable for the injury. . . . The property in this case was perishable. It was shipped at a season of the year when severe weather was to be apprehended, in the ordinary course of nature in this climate. These facts imposed on the carrier the duty of forwarding it to its destination with dispatch. Great diligence was required of it in the performance of its duty. If by its negligence the property was exposed while in its possession to the danger which injured it, we think it is responsible for its injury."

. In Johnson v. Railroad, supra, the court say:

"It cannot be doubted, we think, that the duty to transport with reasonable dispatch, or to use due diligence to that end, is as much a part and parcel of the

common-law duty of the carrier as is the duty to convey safely. In 4 Ruling Case Law, pp. 737, 738, sec. 206, it is said:

" 'While, in the absence of an express contract, no rule of law exists specifying the exact time within which delivery must be made, still the authorities generally agree that there is an implied promise to carry and deliver within a reasonable time. In other words the law requires of common carriers due diligence, this being as much a part of their contract as the obligation to deliver the property transported in good condition, and if any unreasonable and unnecessary delay occurs, either in the transportation thereof or its delivery after arrival at the terminus of the route, for the immediate and proximate damages resulting from such neglect of duty, the carrier is liable.' "

The above rule is supported by late cases from the United States Supreme Court. They are: P. & N. R. Co. v. Produce Exchange, 240 U. S. 34; C. & A. R. Co. v. Kirby, 225 U. S. 155; 30 Sup. Ct. 648, 56 L. Ed. 1033; Ann. Cas. 1914A-501.

The proximate cause of the damage was the freezing brought about by defendant's negligence in failing to carry the goods with due diligence and within a reasonable time. The trial court properly refused to give the jury the requested instructions directing a verdict for defendant.

V. The Nickle Plate assigns error relative to the giving of plaintiff's instructions Nos. 1 and 2. Two grounds of error are assigned: (a) Mere delay in the shipment does not of itself establish negligence; (b) the instructions submit to the jury negligent delay without information as to the constituent elements and without defining the terms.

(a) We agree that mere delay does not of itself establish negligence. However, we think our discussion of the question of a directed verdict in the preceding

paragraph of this opinion fully answers the contention. We have said in effect that the evidence tends to demonstrate that there was an unwarranted and unreasonable delay of perishable property, unexplained, and that freezing weather and consequent damage could have been foreseen and anticipated. We think the evidence demonstrates more than mere delay, for negligent delay was prima facie shown.

(b) A reading of the above instructions will establish that the constituent elements of negligent delay are set forth therein. Among other things, the instructions require the jury to find, in substance, that in transporting the nursery stock the same was negligently delayed for a longer time than the usual, ordinary and reasonable time required to transport same; that had said shipment been transported in a reasonable time it would not have frozen; that it was not transported within a reasonable time and on account of delay, if any, same was caught and subjected to freezing, if any of such duration that said stock was frozen and damaged and that by the exercise of ordinary care defendant should and could have foreseen and anticipated the freezing, etc. While the instructions proceed at greater length than herein set out, we think that we have elaborated, in a condensed form, their contents sufficiently to show that the criticism made is wanting merit.

Further, the term ''negligence'' is so well understood by the laity that defining it would have clarified neither the situation nor the instructions. We think the instructions conform to the law and intelligently inform the jury as to the issues.

VI. The Nickle Plate charges the trial court erred in refusing to give an instruction in its behalf as follows:

''The court instructs the jury that the burden of establishing the negligence of the defendants in the transportation of the shipment complained of is upon the plaintiff, and that unless you find from the greater weight

217 M. A.—4.

of all the evidence in the case that the defendants were guilty of negligence, your verdict must be for the defendants; and that mere proof of delay does not of itself establish negligence.''

We agree that the burden of establishing negligence is on the party who asserts it, and that the above instruction was abstractly correct. However, it was in effect misleading. The unwarranted and unreasonable delay at the season of the year the nursery stock was then being carried constituted evidence of negligence on defendant's part. The facts show more than mere delay. No error occurred in refusing to give the instruction. [Fisher v. Pullman Co., 212 Mo. App. 208, 254 S. W. 114.]

VII.    Defendant also charges the trial court erred in refusing to give a requested instruction reading:

''By ordering a box car in which to make the shipment plaintiff assumed whatever risk there was of damage by freezing by shipping this nursery stock in a box car and if you believe the injury to the shipment was caused by its being shipped in a box car your verdict must be for the defendants.''

The instruction attempted to raise a false issue. If the nursery stock was damaged by the inherent nature of the goods, then defendant was not liable. The instruction implies that the nursery stock demanded care and attention not contemplated by the contract of shipment. We think the converse appears from the evidence, and that plaintiff was asking nothing further than the goods be transported within a reasonable time, which demand was within its rights. This instruction, hypothesizing facts, entirely disregards the facts shown in plaintiff's behalf, and brushes aside the import of its evidence. It is evident plaintiff did not assume whatever risk there was of damage by freezing by shipping in a box car, for it did not assume the result of defendant's negligence. The court properly refused the instruction as asked.

VIII. The Nickle Plate contends that as the verdict was set aside as to the Burlington after the first trial, the court erred in refusing also to grant the Nickle Plate a new trial. The liability of the two carriers was several.

In 29 Cyc. 735, it is said:

"But since their liability is several, as well as joint, most courts now hold that a new trial may be granted to part of them and the verdict allowed to stand as to the others, when it can be done without confusing the issues."

The course pursued by the trial court was in our opinion proper and legal. Error is not made to appear.

The Commissioner recommends that the judgment against the Chicago, Burlington and Quincy Railroad Company be reversed, and that the judgment against the New York, Chicago and St. Louis Railroad Company be affirmed.

PER CURIAM:—The foregoing opinion of DAVIS, C., is adopted as the opinion of the court. The judgment of the circuit court against the Chicago, Burlington and Quincy Railroad Company is accordingly reversed, and the judgment against the New York, Chicago and St. Louis Railroad Company affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.