**BUNGE CORPORATION, a Corporation, Appellant,**

v.

**VALLEY LINE SUPPLY AND EQUIPMENT COMPANY, a Corporation, Respondent.**

**No. 55501.**

Supreme Court of Missouri, Division No. 2.

May 8, 1972.

Motion for Rehearing or for Transfer to Court En Banc Denied June 12, 1972.

Gerhard & Reardon, George R. Gerhard, St. Louis, for appellant.

Elmer Price, Milton I. Goldstein, St. Louis, for respondent; Goldstein & Price, St. Louis, of counsel.

MORGAN, Presiding Judge.

A jury returned a verdict in favor of plaintiff in the amount of $15,500 for de-terioration in value of a barge load of corn while it was being transported from Savage, Minnesota, to Destrehan, Louisiana, by defendant. The trial court denied defendant's post-trial Motion for Judgment In Accordance With Motions For A Directed Verdict, but sustained defendant's Motion For A New Trial because of the giving of instructions numbered 2 and 6. Plaintiff has appealed.

Factually, it appears that plaintiff had purchased approximately 100,000 bushels of corn in Minnesota, which defendant, a common carrier of grain on waterways, agreed to transport to Louisiana. It was loaded in barges MV–782 and MV–814, owned by defendant, on October 28, 1966. At time of loading, the grain was inspected by the State Grain Inspection Division of the State of Minnesota under classification standards approved by the U. S. Department of Agriculture. The 48,151.25 bushels loaded in MV–814, involved in this cause, as well as the remainder which was placed in MV–782, were graded as No. 3 yellow corn. The standards mentioned include numerical grades of corn which start with the top grade of No. 1, progress downward through No. 5, with a further grade referred to as "sample." All five numbered grades as well as the sample grade are acceptable for human consumption, but that of lesser quality is called "salvage" and is not. Such classification is based on inspection as to weight per bushel, and percentage of moisture content, damaged kernels and foreign material plus a rather subjective test as to various stages of souring.

Defendant picked up barge MV–782 with its towing vessel on the same day both barges were loaded and delivered it to its destination some thirteen days later on November 10. However, MV–814 remained in the harbor where loaded for some twelve days before it started downriver. After a further delay at Cairo, Illinois, of six days, it arrived thirty days after loading or seventeen days after MV–782. Inspection by government inspectors at Des-

trehan resulted in most of the cargo of MV–814 being classified as salvage. Plaintiff accepted the highest of three bids or $1.00 per bushel for all of the grain in MV–814 in contrast to the $1.52½ per bushel purchase price, and in this action sought damages of $25,279.41.

We first consider whether or not plaintiff made a submissible case, Wilhelm v. Haemmerle, Mo., 262 S.W.2d 609, 611; Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S.W.2d 333, 336, and, in connection therewith, will first note arguments submitted by defendant.

■■■ First, it is argued that plaintiff pleaded specific negligence but failed to prove what constituted a reasonable time for shipment or a causal connection between the transit time of thirty days and damage to the corn. Defendant tenders a suggestion that plaintiff could have avoided such burdens if it had sued defendant under its common law liability as a common carrier (insurer doctrine) by merely alleging "delivery of the corn in good order to the defendant, redelivery by the defendant to the plaintiff of the corn in damaged condition and the damages resulting from such deteriorated condition." Nevertheless, plaintiff, of necessity, agrees that it must prevail, if at all, under the theory of recovery chosen, i. e., negligence. Scott County Milling Company v. Thompson, Mo. App., 255 S.W.2d 121. "It appears to be settled in this state that, even when the facts will permit a suit against a common carrier as an insurer of freight transported by it, yet, if the pleader alleges negligence, he must stand upon his allegations and prove the negligence alleged or fail." Ozark Fruit Growers' Ass'n v. St. Louis-San Francisco R. Co., 226 Mo.App. 222, 225, 46 S.W.2d 895, 896. In reviewing this cause as a negligence action, we initially must recognize the duty which defendant, as a common carrier, owed plaintiff. One, among others of which there can be no dispute, is the obligation or duty to make delivery within a reasonable time, or, as expressed by words of the industry and adopt-ed by the courts, "with reasonable dispatch." As said in Johnson v. Missouri Pac. R. Co., 211 Mo.App. 564, at 571, 249 S.W. 658 at 660: "It cannot be doubted, we think, that the duty to transport with reasonable dispatch, or to use due diligence to that end, is as much a part and parcel of the common-law duty of the carrier as is the duty to convey safely." Mount Arbor Nurseries v. N. Y. C. & St. Louis R. Co., 217 Mo.App. 31, 273 S.W. 410, 414; Howell v. Hines, Mo.App., 236 S.W. 886, 888. Defendant concedes the presence of such a duty. Did it negligently fail to carry it out? To establish that defendant did, the law is established that plaintiff was required to show something more than the delay itself. "It has been repeatedly held that mere proof of delay, of itself, will not support an inference of negligence on the part of the carrier; but it also has been held that the addition to such proof of very slight evidence of negligence on the part of the carrier will suffice to raise the inference that the delay was negligent." Holland v. Chicago, R. I. & P. Ry. Co., 139 Mo.App. 702, 713, 123 S.W. 987, 991. As to the required "slight evidence" presented in addition to the delay, we note the testimony of defendant's harbor supervisor (now retired) at the point of loading. He was asked on cross-examination: "The motor vessel Ray carrying some other barges and Barge 782, which was loaded along with 814, went down river, left the harbor after 814 was completely loaded, isn't that correct?" His answer was: "That's correct." He also testified that defendant and other carriers had reciprocal agreements whereby one might pick up the barges of another if the latter had no towing vessel available. The record further reflects that he testified:

"Q. Were you aware that it [MV–814] sat around up there from October 28th to November 9th?

"A. No, sir.

"Q. You were not aware of that?

"A. No.

\* \* \* \* \* \*

"Q. Is that a long time for a barge full of corn waiting to be picked up?

"A. It's longer than usual I know."

In addition, plaintiff offered testimony of an employee of its marine department who testified the usual pickup delay was two to four days. Evidence was offered, reference the delay in Cairo, Illinois, that a tow vessel of defendant [The Valley Transporter] left Cairo, while MV–814 was there, with nonperishable items such as steel which resulted in a further delay of four days at that point. Defendant offered no explanation of the twelve day delay in Minnesota, but it did contend MV–814 remained at Cairo, Illinois, because plaintiff had requested that the corn be tested at that point. Plaintiff had made several inquiries as to the status of the trip during the period involved. We believe plaintiff met the demands of the "slight" additional evidence test which accepts the fact that generally knowledge of a cause for delay is within the peculiar knowledge of the carrier. Ernest E. Fadler Co. v. Chicago, R. I. & P. R. Co., Mo. App., 261 S.W.2d 394, 398. Since plaintiff made a prima facie case, it was for defendant to account for the unreasonable delay. In addition, we believe the evidence was sufficient to sustain a finding of a causal connection between the unusually long trip and the deterioration of the corn from a No. 3 grade to salvage. Expert witnesses for both parties agreed that corn is a living organism, breathing and producing heat, which will deteriorate at a rate commensurate with its moisture content, lack of oxygen and passage of time. Presumably, the grade of corn involved would determine the time required for a cargo to become salvage. Defendant complains that it was not informed the cargo on MV–814 was graded No. 3, but failed to establish that such a grade was not of a good and marketable quality generally accepted for shipment. Plaintiff counters with the argument that even though it were assumed, arguendo, that No. 3 corn had an inherent infirmity, the defendant is not absolved from liability. As said in Hurley v. Illinois Central R. Co., 221 Mo.App. 478, at 484, 282 S.W. 97, at 100: "If the inherent infirmity of the grain combined with the negligence of the defendant to cause the loss, then defendant is liable." For defendant to avoid liability for its negligence, it must show the alleged infirmity was the sole cause of the loss. Vernon v. American Ry. Express Co., Mo.App., 222 S.W. 913, 914. Defendant also failed to show that No. 3 corn is classified in the normal sense as a "perishable" item, like fresh fruits and vegetables, and of which it should have been notified. An abnormal delay in shipment obviously could also reduce No. 1 corn to salvage. The evidence authorized a jury finding for recovery on a negligence theory based both on failure to deliver with reasonable dispatch and causation.

Second, defendant submits that it was relieved of any liability for delay in shipment by the bill of lading. We cannot agree. Section 49 U.S.C.A. § 20(11), provides, in part, "Nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which it has under the existing law." Ernest E. Fadler Co. v. Chicago, R. I. & P. R. Co., Mo.App., 261 S.W.2d 394, 397. A common carrier cannot contract itself out of liability for its own negligence. Resolute Ins. Co. v. Morgan Drive-Away, Inc., Mo.App., 403 S.W.2d 913. Mo.Dig., Carriers, ☞ No. 150.

Third, defendant contends suit was not brought against it, Valley Line Supply And Equipment Company, within the period of two years and one day as called for in Section 2(c) of the bill of lading. We need not consider the validity of such a time limitation in so far as it might have been authorized by the provisions of Section 20(11) of the Interstate Commerce Act, 49 U.S.C.A., for the reason plaintiff has complied with such provision. The statute provides such a limitation may

start, if at all, within such time after ". . . the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim . . . ." Mississippi Valley Barge Line Co. denied the claim and the present defendant, Valley Line Supply And Equipment, has now been made the defendant. Since the latter company never denied the claim, until doing so in this action, it is in no position to assert the time limitation mentioned. Those interested in the effect of the time limitation authorized by the cited statutory provision may see Louisiana & W. R. Co. v. Gardiner, 273 U.S. 280, 47 S.Ct. 386, 71 L.Ed. 644 or Southern Pacific R. R. Co. of Mexico v. Gonzalez, 48 Ariz. 260, 61 P.2d 377, 1. c. 386.

The parties have cited most every case involving claims against a common carrier. We have considered them all and find none to be inconsistent with the principles announced in the cases herein cited and followed. Plaintiff made a submissible case.

■ We now consider plaintiff's contentions the trial court erred in granting defendant a new trial because of the giving of instructions numbered 2 and 6.

No. 2 declared:

"Your verdict must be for plaintiff Bunge Corporation if you believe:

First: Defendant failed to pick up and transport barge MV–814 with reasonable dispatch, and

Second: Defendant was thereby negligent, and

Third: As a direct result of such negligence the plaintiff sustained damage, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 3.

M.A.I. 17.01 modified"

Defendant relies on the general proposition that an instruction is erroneous which submits an issue to the jury which is not supported by the evidence, and then attacks instruction number 2 on the ground: ". . there was no evidence to support the term 'reasonable dispatch.'" We have heretofore found otherwise and need not repeat such evidence here. Next, it is alleged the instruction commingled theories of recovery based on contract and negligence. The argument is bottomed on the assertion that plaintiff's petition set out defendant's agreement to haul the corn with reasonable dispatch and is thus based on the contract (bill of lading). We necessarily note that this argument is inconsistent with that previously considered, i. e., that plaintiff elected to proceed on a negligence theory and was required to rely on his proof thereof. Plaintiff refutes the latter argument by submitting that reference to the bill of lading in the petition was made solely for the purpose of establishing defendant's common law duty as a common carrier to haul the cargo with reasonable dispatch. A fair reading of the petition sustains plaintiff's position. Further, defendant contends the instruction failed to require a jury finding that the corn was in good order when loaded. Such a submission was not required for the reason there was no issue as to the "good order" of the corn. Plaintiff's evidence showed the cargo to be No. 3 corn, and defendant did not challenge this fact or show that it was not suitable for hauling to Louisiana within the usual time for such a trip. Plaintiff fully complied with the dictates of M.A.I. by properly modifying 17.01 as required.

The court also based its granting of a new trial on alleged error in giving instruction number 6, which is a definition of negligence provided for in M.A.I. 11.02. The motion for new trial was in error in asserting that number six used the words "same *and* similar circumstances" instead of "same *or* similar circumstances." The record of the actual instruction shows it to have used the latter wording and to have been in compliance with M.A.I. 11.02.

Plaintiff's damage instruction was that provided for property damage by M.A.I. 4.02. Even if we were to ignore plaintiff's obligation to use the same, it is sufficient to say that if defendant considered it prejudicial, as it now argues, that the instruction should have been modified by adding the words "at destination," defendant could have requested such modification or an additional instruction covering the matter. A jury of reasonable intelligence would know that for it to determine the extent of damage it had to take into consideration the state of affairs "at destination" or Destrehan.

Lastly, defendant contends the ruling for a new trial can be affirmed because of the trial court's refusal to give two other instructions offered by defendant. The first would have informed the jury plaintiff "was under a duty to minimize its damages," and the second would have allowed the jury to determine if the action was barred by the terms of the bill of lading. As to the first, note has already been taken of plaintiff's ignored efforts to expedite the shipment, and defendant offered no evidence as to what plaintiff might have done to lessen the damage or what it did do to enhance the same. " . . . [w]hen the shipper sold it at the point of destination for the best price it would bring he did all that could be fairly required of him to save the carrier from resulting loss." Gulf, Colorado & Santa Fe Railway Co. v. Texas Packing Co., 244 U.S. 31, 37, 37 S.Ct. 487, 490, 61 L.Ed. 970. As to the second, the question was one of law for the court.

Finding no error in the trial of this cause, the judgment of the trial court is reversed, and the cause is remanded with directions to reinstate the verdict and judgment for plaintiff.

HENLEY and DONNELLY, JJ., and DIXON, Special Judge, concur.