**Don SHURTZ, d/b/a Don Shurtz Realty, Plaintiff,**

v.

**Robert B. JOST, d/b/a Jost Construction Company, Defendant.**

**Walter J. BESCH and Heide U. Besch, Plaintiffs,**

v.

**Robert B. JOST, d/b/a Jost Construction Company, Defendant.**

**No. 38984.**

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 20, 1979.

---

Edward P. Burke, Wion, Burke & Boll, Clayton, for plaintiffs.

Harold E. Horsley, Jr., Valley Park, for defendant.

WEIER, Chief Judge.

This case involves two lawsuits and because of a counterclaim in one, three causes of action. The two suits were consolidated by the trial court and the issues submitted to a jury. From the resulting verdicts and judgments against the defendant Robert B. Jost, he appealed.

Plaintiff Don Shurtz was a real estate broker operating under the name of Don Shurtz Realty. In the Spring of 1973 he met plaintiffs, Walter J. and Heide U. Besch, his wife, who desired to sell their old residence and purchase a new house. Shurtz agreed to place the old residence on the market for sale and suggested that Mr. and Mrs. Besch contract with Robert B. Jost

a building contractor to erect a new house for them. An earnest money sales contract form which Shurtz used in his realty business was used to draft the building contract between Besch and Jost. The house was to be erected upon a certain lot in a subdivision according to a master plan and specifications located at the office of Jost Construction Company. It was to follow the style of a prefabricated house manufactured by Concord Homes and shown upon a brochure which was introduced as a plaintiffs' exhibit. The basic house shown upon the exhibit was one known as a "split level" model with three bedrooms, bath, kitchen, dining room and living room on the first floor, or upper ground level and a two-car garage, half bath, family room and bedroom in the semi-basement or lower level of the plan. The brochure indicated that there was 2,045 square feet of living space in this house. The brochure presented a schematic plan of the house both as to the first floor and the basement. It was rectangular in shape with the first floor projecting about one foot over the basement wall on the front side. According to the outside dimensions given in this plan, the first floor contained 1,058 square feet and the basement 1,002 square feet or a total of 2,060 square feet.

A dispute arose between Shurtz and Jost with regard to the commission due Shurtz from Jost on the negotiation and sale of the house and lot. Shurtz contended that he was entitled to $2,045 because the sales contract provided for a commission of $1 per square foot of living space; and according to the brochure, the model selected by Mr. and Mrs. Besch contained 2,045 square feet of living space. Jost on the other hand contended that the contract had been altered after he had executed the copies presented to him by Shurtz and that the words indicating that he agreed to pay $1 per square foot of living space were not in the contract when he signed it. This dispute gave rise to the first lawsuit which, as previously indicated, was consolidated with the other lawsuit brought by Mr. and Mrs. Besch against Jost and tried at the same time. A jury brought in a verdict in favor

of Shurtz and against Jost in the sum of $2,045.

Now on appeal, Jost contends that error was committed by the trial court in giving a damage instruction directing the jury to return a verdict of $2,045 in the event that the jury found for Shurtz on the verdict-directing instruction. Jost gives as his reason that the contract provided for a commission of $1 per square foot of living space and that the evidence showed there was only 1,058 feet of living space because the basement was not to be finished and therefore could not be considered as additional living space.

■ The damage instruction mandates that if the jury finds in favor of Shurtz on his claim then it must award Shurtz the sum of $2,045 together with interest from December 5, 1973. It was a modified version of MAI 4.05 submitting damages in a claim for broker's commission where the percentage is agreed upon. There can be no doubt that here the charge of $1 per square foot of "living space" was agreed upon, if this provision in the contract was found valid by the jury and was not the result of some unauthorized change as contended by defendant. The extent of the living space, however, was also disputed between the parties and would have to be determined by the verdict of the jury. As written, the damage instruction left no discretion in its determining the amount due. If the jury found in plaintiffs' favor on the verdict-directing instruction, then the damage instruction mandated that $2,045 be found as damages.

We have examined the evidence and do not find that it supports a conclusion of unassailable fact that the house contained 2,045 feet of living space. Mr. Besch testified that the part of the downstairs which came with a fourth bedroom and family room was deleted from the plan which was the subject of the contract between Jost and Besch. The order for the prefabricated home sent to the supplier indicated that the lower level alternate incorporated in the house was the one which provided for doors

and hardware for the furnace room and studs for the garage wall but did not include the materials for the halls, closets, plumbing unit and other materials to finish off the lower level. The application for building permit introduced by plaintiff indicated that the house was a one story house with a length of 46 feet 8 inches and a width of 22 feet 8 inches.

The meaning of the phrase "living space" is so simple that there is little need to seek a legal definition. Obviously it means an area in which to dwell or reside. If the basement had been finished or constructed for habitation, then the jury might find it to be "living space" within the intent and meaning of the contract. But here the instruction did not allow the jury to consider the application of the provision in the contract to the facts. It directed a verdict in the sum of $2,045. The jury had evidence before it by which it could have arrived at a sum other than $2,045. The extent and area of the living space was at issue under the evidence and this issue should have been passed on by the jury. *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., Inc.*, 525 S.W.2d 345, 350[12–16] (Mo.App.1975). This error requires reversal and remand of the case of *Shurtz v. Jost.*

■ We now turn to the claim of Besch against Jost for general and special damages arising out of the breach of the building contract. Jost counterclaimed against Besch for the balance of the construction contract. The court gave verdict-directing instructions on behalf of the plaintiffs and the defendant. The instructions on behalf of the plaintiffs Besch directed a verdict in their favor if the jury found that the defendant Jost did not complete all of the items called for in the contract in the manner therein required for the construction of the house and "because of such failure, the defendant's contract obligations were not substantially performed." The other instruction directed a verdict for the defendant Jost on his counterclaim if the jury believed that the defendant had "substantially performed his contract obligations."

On the Besch claim after determining that the defendant's contract obligations were not substantially performed, the jury brought in verdicts in favor of these plaintiffs and assessed their damages at $3,500. On the counterclaim, the jury was compelled to find exactly the opposite, that is the defendant had substantially performed under the terms of the contract and brought in a verdict in favor of the defendant in the sum of $750. It is obvious that the instructions conflict. Under the first, the jury must find that the defendant did not substantially perform the terms of his contract; and under the second, the jury must find that he did substantially perform his contract. In this instance, in order to bring in awards as they did, the jury was compelled to arrive at inconsistent findings upon the hypotheses of the instructions.

■ Instructions may not be confusing or misleading. When they are, then they are prejudicially erroneous. *Long v. REA Express Company*, 573 S.W.2d 62, 67 (Mo.App. 1978); *Woodford v. Illinois Central Gulf Railroad Company*, 518 S.W.2d 712, 716[6] (Mo.App.1974).

■ For the reasons given, the judgment in the case of *Besch v. Jost* against Jost must be reversed and remanded for new trial. Although a number of other contentions of error were made by the appellant, these matters will probably not again be matters of controversy between the parties. There is one matter which should probably be commented on. One of the issues on appeal was the contention that a special damage instruction should have been given. Although it is currently required that instruction MAI 4.01 as to the measure of damages be given in assessing contract as well as tort damages, it is difficult to properly present to the jury the problems arising out of special damages in a breach of contract case using this instruction. For that reason, it may be advisable for counsel to consider the use of a modifying or explanatory instruction to cover the matter. *Bunge Corporation v. Valley Line Supply and Equipment Company*, 480 S.W.2d 859, 864 (Mo.1972). On retrial, it may also be

advisable for counsel to consider the procedure recommended in *Forsythe v. Starnes*, 554 S.W.2d 100, 111–112 (Mo.App.1977). Many of the alleged errors charged here could probably be eliminated if consideration is given at time of retrial to the principles enunciated in that case.

For the reasons given, the judgments of the trial court in each of the consolidated cases against Jost are reversed and these cases are remanded for new trial as to plaintiffs' causes of action against Jost. Plaintiffs Besch did not appeal from the judgment against them on Jost's counterclaim and this remains a valid judgment. Costs on appeal are divided one-half against plaintiff Shurtz and one-half against plaintiffs Besch.

DOWD, P. J., and SATZ, J., concur.